UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/2/2016

KENO ROBERTS,

                                  Plaintiff,        :

                        -v -

CITY OF NEW YORK, *et al.*,

                                Defendants.

---------------------------------------------------------------X

1:14-cv-5198-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Keno Roberts is a former pretrial detainee who, proceeding *pro se*, brings a number of federal and constitutional claims against the City of New York ("the City"), medical doctors and assistants, and correctional officers and other prison officials based primarily on the allegedly inadequate medical treatment that he received for his type 2 diabetes.  Mr. Roberts alleges that various Defendants failed to correctly diagnose his diabetic condition—instead mistaking his symptoms for gas—and failed to provide appropriate medication and diet to treat the condition. Two groups of Defendants now move to dismiss the complaint, while a number of other Defendants have not been properly served.

Because the complaint fails to plausibly allege that any Defendant acted with the requisite state of mind in order to state a claim for deliberate indifference, and otherwise fails to state a viable federal cause of action, Defendants' motions to dismiss are GRANTED.  The claims against the unserved Defendants are DISMISSED without prejudice for failure to prosecute.

## II.    BACKGROUND

At the time that Mr. Roberts brought this action, he was a pretrial detainee being held at Rikers Island, though he has since been released from custody.  *See* Pl.'s Notice of Change of Address, Dkt. No. 82.  Mr. Roberts alleges that he visited the prison's medical clinic on February 8, 2013, because he was feeling "sick."  Second Amended Complaint ("Second Am. Compl.") at 3, Dkt. No. 76.  Upon examination, Physician Assistant ("P.A.") Devivo diagnosed Mr. Roberts with gas and prescribed an unspecified medication for him, although that medication was not available when Mr. Roberts later went to pick it up.  *Id.*  At some point within the next few days, Mr. Roberts returned to the clinic because he was suffering from shortness of breath.  *Id.*  At that time, Mr. Roberts was hospitalized and diagnosed with diabetic ketoacidosis, a life-threatening condition caused by high blood-sugar levels.  *Id.*

On February 13, 2013, Mr. Roberts was transferred to Bellevue Hospital and placed under the care of Dr. Karen Greenwald.  *Id.* at 4.  Mr. Roberts alleges that Dr. Greenwald provided inadequate medical care and that, as a result, his condition deteriorated without improvement while at Bellevue Hospital.  *Id.*  In particular, Mr. Roberts notes that he requested an appointment with an endocrinologist, a specialist that he asserts could better treat his diabetic condition, but that Dr. Greenwald initially refused the request.  *Id.*  Notwithstanding that initial refusal, Mr. Roberts acknowledges that he received an endocrinologist appointment within a week.  *Id.*

On February 18, 2013, an endocrinologist prescribed a regimen of treatment that included medication and dietary instruction, and Mr. Roberts was told that he would continue seeing the endocrinologist on a regular basis.  *Id.*  Despite that prescribed treatment, Mr. Roberts alleges that his blood-sugar levels "continued to be erratic" while at Bellevue Hospital, and that he experienced other diabetic complications "that were apparently no concern of the medical staff."  *Id.*  Mr.

Roberts remained at Bellevue Hospital for ten days in total, and was discharged on February 22, 2013. *Id.*

After leaving Bellevue Hospital, Mr. Roberts was sent to Northern Infirmary Command on Rikers Island, where he was placed under the care of Dr. Raul Ramon. *Id.* During that time, Mr. Roberts alleges that his condition "never fully stabilized," and that he never saw an endocrinologist again, notwithstanding the previous plan of treatment that included regular appointments. *Id.* Mr. Roberts remained at Northern Infirmary Command for less than two months, and was discharged on approximately April 18, 2013. *Id.*

Following his discharge from Northern Infirmary Command, Mr. Roberts alleges that his diabetic condition continued to deteriorate for over two years while he remained incarcerated at Rikers Island. *Id.* at 5–6. Mr. Roberts asserts that he now suffers from type 2 diabetes, and attributes the deterioration in his health to Defendants' failure to provide "proper medications" and "an adequate bland diet to help control his diabetes" during his incarceration. *Id.*

Mr. Roberts also raises separate allegations concerning an abuse of authority by correctional officers. On April 19, 2013, the day after Mr. Roberts was released from Northern Infirmary Command, Mr. Roberts alleges that unspecified correctional officers conducted a housing area search of common areas and inmates' cells. *Id.* at 4. Mr. Roberts contends that the correctional officers verbally and physically abused him during that search, pouring coffee onto his legal papers while yelling at him "[t]his is jail, HANDLE IT!" *Id.* at 4–5.

Mr. Roberts initially filed suit on July 7, 2014. Complaint, Dkt. No. 1. In that complaint, Mr. Roberts brought claims against, among others, Defendants Warden Duffy, P.A. Devivo, Dr. Greenwald, and a number of John Doe individuals. *Id.* The Court subsequently issued a *Valentin* Order, pursuant to *Valentin v. Dinkins*, 121 F.3d 76 (2d Cir. 1997), requiring that the City ascertain and provide the identities and addresses of the John Doe defendants that Mr. Roberts sought to sue.

Dkt. No. 6.  In response to the Court's order, the City identified a number of John Doe defendants through a series of letters.  Dkt. Nos. 11, 14, 20, 38.  While the City worked to identify the John Doe defendants, Dr. Greenwald proceeded separately in the litigation and moved to dismiss the claims against her.  Dkt. No. 35.  The Court granted Dr. Greenwald's motion to dismiss, but also granted Plaintiff leave to amend the complaint.  Dkt. No. 51.

Mr. Roberts subsequently filed an amended complaint, Dkt. No. 56, but the pleading was deficient in many respects.  Although the amended complaint included additional allegations as to Dr. Greenwald, it failed to name any of the individuals identified by the City in response to the Court's *Valentin* order—and indeed, failed to include substantive allegations as to *any* defendant other than Dr. Greenwald.  *See* September 1, 2015 Order, Dkt. No. 62.  In light of Mr. Roberts's *pro se* status, the Court held a telephone conference with the parties and explained that any amended complaint replaces—rather than supplements—a prior pleading.  *See* September 22, 2015 Order, Dkt. No. 69.  Mr. Roberts was then granted leave to file another amended complaint, and was reminded that any such amended complaint "must allege facts sufficient to state a claim with respect to *all* defendants he intends to bring claims against."  *Id.* at 1 (emphasis added).

Mr. Roberts then filed a second amended complaint, which included as defendants those individuals identified by the City in response to the Court's *Valentin* order.  Dkt. No. 76.  Liberally construing the allegations in the second amended complaint, Mr. Roberts raises a number federal claims, including claims under 42 U.S.C. § 1983 for inadequate medical care, excessive force, and denial of access to the courts; civil rights violations under 42 U.S.C. § 1986; and disability discrimination claims under the Rehabilitation Act and the Americans with Disabilities Act.  Two sets of motions to dismiss were subsequently filed by:  (1) Dr. Greenwald, Dkt. No. 87; and (2) the

4

City, Warden Duffy, P.A. Devivo, Correction Officer Holder, and Captain Polite,[1] Dkt. No. 95.  The

remaining defendants have not been served, and thus have not responded to the complaint.

     Mr. Roberts failed to timely oppose or respond to either motion to dismiss, despite the

Court *sua sponte* granting him two separate thirty-day extensions of time to do so, Dkt. Nos. 92, 99.

Mr. Roberts has yet to file a response as of the date of this order, and thus the Court decides the

motions without his input.

## III.    STANDARD OF REVIEW

     Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Rule 8 "does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)).

     When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the Court "must accept all allegations in the complaint as true and draw all inferences in the non-

moving party's favor."  *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)

(internal quotation marks and citation omitted).  The Court, however, is not required to credit "mere

conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556

U.S. at 678.  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that,

if accepted as true, "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S.

at 570).  To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the

court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."

*Id.*

---

[1] Captain Polite's name appears as "Captain Pollite" in the complaint, but was corrected to "Captain Polite" in his opposition.

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and "interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (internal quotation marks and citation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .") (internal quotation marks and citation omitted). "This guidance applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## IV. ANALYSIS

### A. *Section 1983 Claims*

To prevail on a claim brought under 42 U.S.C. § 1983, Plaintiff must show that Defendants "acted under color of state law and that [they] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Liberally construed, Plaintiff raises constitutional claims under the Fourteenth Amendment,[2] alleging that he received inadequate medical care and was subject to excessive force, and under the First Amendment, alleging that he was denied access to the Courts. The Court addresses Defendants' arguments to dismiss each of the claims in turn.

#### 1. Inadequate Medical Care

Plaintiff first alleges that he received constitutionally inadequate medical care as a result of various Defendants' failure to diagnose and treat his type 2 diabetes.

---

[2] Because the Eighth Amendment's protections do not extend to pretrial detainees, who may not be "punished" prior to a conviction, Plaintiff must bring his claims under the Fourteenth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) ("[A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment if held in state custody.").

### a. Legal Standard

In the Second Circuit, claims alleging inadequate medical care are "analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This standard has an objective prong and a subjective prong: "First, the alleged deprivation must be, in objective terms, sufficiently serious. . . . Second, the defendant must act with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citation omitted).

### i. Objective Prong

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the Court must consider "whether the prisoner was actually deprived of adequate medical care." *Id.* Under the first inquiry, "adequate medical care is 'reasonable care' such that 'prison officials who act reasonably cannot be found liable.'" *Martinez v. Aycock-West*, No. 12-cv-4574 (KMK), 2016 WL 407294, at *5 (S.D.N.Y. Feb. 1, 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845, (1994)).

Second, the Court must consider "whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 280. The second inquiry requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* "[G]iven the fact-specific nature of Eighth Amendment denial of medical care claims, it is difficult to formulate a precise standard of 'seriousness' that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of Eighth Amendment concern) yet appropriately specific[.]" *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) (ellipses,

internal quotation marks, and citation omitted).  Thus, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

Nonetheless, courts consider several factors in evaluating the seriousness of a medical condition, including:  "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702).  "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower," *Salahuddin*, 467 F.3d at 280, "and the focus is on the alleged inadequate treatment, not the underlying condition alone," *Sepolveda v. Armor Corr. Health Serv., Inc.*, No. 15-cv-4415 (SJF) (GRB), 2016 WL 1435677, at *4 (E.D.N.Y. Apr. 11, 2016) (internal quotation marks and citation omitted).

## ii.  Subjective Prong

"In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).  "Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280).  Thus, in order to state a claim for deliberate indifference to his serious medical needs, a plaintiff must allege that the defendant "knew of and disregarded an excessive risk to [plaintiff's] health or safety and that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and

also drew the inference." *Caiozzo*, 581 F.3d at 72 (quoting *Farmer*, 511 U.S. at 837) (alterations and internal quotation marks omitted).

### b. Dr. Greenwald

Plaintiff alleges that Dr. Greenwald denied him constitutionally adequate medical care while he was at Bellevue Hospital, from February 13 until February 22, 2013.  In the Court's July 13, 2015 order granting Dr. Greenwald's previously filed motion to dismiss, Dkt. No. 51, the Court found that Plaintiff adequately alleged facts to satisfy the objective prong, but failed to plausibly allege that Dr. Greenwald acted with deliberate indifference under the subjective prong.  In so doing, the Court explained that Plaintiff failed to allege "facts which, if true, would show that Dr. Greenwald in fact drew [an] inference [that a serious risk of harm existed] and then consciously disregarded it."  *Id.* at 10.

In the second amended complaint, Plaintiff alleges that:  (1) his diabetic condition deteriorated while he was under Dr. Greenwald's care; (2) Dr. Greenwald initially refused to allow him to see an endocrinologist for approximately six days; and (3) he suffered other unspecified medical problems related to his diabetes that "were apparently no concern of the medical staff." Second Am. Compl. at 4.  For the same reasons described in the July 13, 2015 Order, Plaintiff alleges a sufficiently serious medical need that was not addressed by Dr. Greenwald, and thus satisfies the objective prong.  But Plaintiff's second amended complaint fails to cure the deficiencies identified in that order with respect to the subjective prong, and thus the claims against Dr. Greenwald must be dismissed.

The complaint is devoid of any facts plausibly suggesting that Dr. Greenwald acted with deliberate indifference.  Although Plaintiff alleges that his health failed to improve while under Dr. Greenwald's care and asserts that he should have been permitted to see an endocrinologist sooner, "the fact that a plaintiff feels that more should have been done for his condition is not a sufficient

basis for a deliberate indifference claim[.]" *Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001); *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311–12 (S.D.N.Y. 2001) ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.") (citing *Chance*, 143 F.3d at 703 (2d Cir. 1998)). As the Court previously explained, Plaintiff "acknowledges that when [his] condition worsened, Dr. Greenwald referred him to a specialist, which does not support a contention that she acted with deliberate indifference." July 13, 2015 Order at 10. Moreover, Plaintiff's conclusory allegations that his medical condition was of no apparent concern to the medical staff is, without more, insufficient to plausibly suggest deliberate indifference.

### c. *P.A. Devivo*

The allegations concerning P.A. Devivo are limited: Plaintiff alleges that P.A. Devivo misdiagnosed him with suffering from gas, when he was in fact experiencing elevated blood-sugar levels, and that medication that P.A. Devivo prescribed was unavailable when Plaintiff went to pick it up. For purposes of this motion, the Court assumes that the delay in treatment resulting from P.A. Devivo's alleged misdiagnosis—at most six days, from February 8, 2013 until February 13, 2013 when Plaintiff was placed under the care of Dr. Greenwald—satisfies the objective prong.

Nevertheless, Plaintiff fails to allege that P.A. Devivo acted with a sufficiently culpable state of mind, and thus fails to satisfy the subjective prong. Nowhere in the complaint does Plaintiff allege that P.A. Devivo was aware of, and disregarded, a substantial risk of serious harm. Indeed, the complaint alleges facts suggesting the contrary—that P.A. Devivo believed Plaintiff was simply experiencing gas pains, rather than a potentially life threatening diabetic condition. Even if P.A. Devivo was negligent in failing to properly diagnose Plaintiff's symptoms and failing to prescribe proper medication, the complaint fails to state a claim for deliberate indifference. *See Chance*, 143 F.3d at 703 ("[N]egligence, even if it constitutes medical malpractice, does not, without more,

engender a constitutional claim."); *accord Estelle*, 429 U.S. at 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

#### d.  Failure to Provide Diabetic Diet

Plaintiff next alleges that he was not prescribed a proper diabetic diet after he was diagnosed with diabetes, and that as result, his health has continued to suffer.  It is well established that "the Eighth Amendment prohibition against cruel and unusual punishment . . . require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks and citation omitted).

A number of courts have found that the failure to provide a medically appropriate diet for individuals with diabetes may be a sufficiently serious deprivation to satisfy the objective prong of the Eighth Amendment standard.  *E.g.*, *Johnson v. Harris*, 479 F. Supp. 333, 337 (S.D.N.Y. 1979); *Montalvo v. Lamy*, 139 F. Supp. 3d 597, 607 (W.D.N.Y. 2015); *Grieco v. Fischer*, No. 12-cv-429 (WMS), 2013 WL 5488905, at *4 (W.D.N.Y. Sept. 30, 2013) (adopting report and recommendation).  Thus, the Court assumes that the complaint satisfies the objective prong for purposes of the present motions.

Like the other claims for deliberate indifference, however, Plaintiff fails to satisfy the subjective prong.  Although Plaintiff alleges that "Defendants have sufficient knowledge and awareness of what kinds of food people who suffer from the kind of Diabetes that Plaintiff suffers from are suppose[d] to eat," Second Am. Compl. at 5–6, Plaintiff does *not* allege that any Defendant was aware that his diet was inadequate, or that any Defendant otherwise had reason to be aware of his diet at all.  Plaintiff does not, for example, allege that he complained about his diet or requested a

different meal at any time.  Thus, there is no basis to infer that any Defendant acted with the requisite mental state to satisfy the subjective prong.  *See Montalvo*, 139 F. Supp. 3d at 607–08 (granting motion to dismiss where complaint failed to suggest that defendants "were aware that [p]laintiff's diet was nutritionally inadequate").

Accordingly, Defendants' motions to dismiss Plaintiff's claims for inadequate medical care are GRANTED.

### 2.   Excessive Force and Denial of Access to the Courts

Plaintiff next claims that unidentified correctional officers abused their authority during a housing search, pouring coffee onto his legal papers.  Plaintiff alleges that that he filed a grievance and forwarded it to Warden Duffy, but that he "never received a response or any kind of feedback from it."  Second Am. Compl. at 5.  Liberally construing the complaint, Plaintiff alleges claims for excessive force and denial of access to the courts based on the destruction of his legal papers.  These claims must be dismissed as to Warden Duffy, however, because Plaintiff fails to plausibly allege his personal involvement.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  A supervisor's personal involvement may be shown by evidence that she:  (1) "participated directly in the alleged constitutional violation;" (2) "failed to remedy the wrong" after being informed of the violation through a report or appeal; (3) "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;" (4) "was grossly negligent in supervising subordinates who committed the wrongful acts;" or (5) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  "[L]iability for supervisory

government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. 662).

Plaintiff's allegation that he forwarded a grievance to Warden Duffy, standing alone, is insufficient to establish his personal involvement. *See Honig v. Bloomberg*, No. 08-cv-541 (DAB), 2008 WL 8181103, at *5 (S.D.N.Y. Dec. 8, 2008) ("In numerous cases addressing this issue in the prison context, courts have repeatedly found that the allegation that a supervisory official ignored a letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983.") (ellipses, internal quotation marks, and citation omitted).  Rather, personal involvement will be found "where a supervisory official receives *and acts on* a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (emphasis in original) (quoting *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002)); *see id.* (finding that "mere receipt of [the plaintiff's] grievance, and [certain defendants'] subsequent inaction, are insufficient to establish the personal involvement of these defendants" under either the second or fifth *Colon* factors).

Because the complaint fails to allege that Warden Duffy acted on the complaint—and in fact affirmatively alleges that he took no action—the claims must be dismissed as to Warden Duffy.  *See id.*  ("[A]s a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement.") (brackets, internal quotation marks, and citation omitted).

### 3.  *Monell* Liability

To hold a municipality liable under Section 1983, a plaintiff must plead facts supporting a plausible inference that the constitutional violation he suffered was caused by a municipal policy or custom.  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To state a claim against the City of

New York, a plaintiff must both "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691).

The complaint fails to mention, let alone plausibly allege, the existence of any policy or practice sufficient to give rise to a claim under *Monell*. Plaintiff's Section 1983 claims against the City must therefore be dismissed.

### 4. Personal Involvement

"A complaint that fails to allege how a specific defendant violated the law or injured the plaintiff should be dismissed as to that defendant." *O'Leary v. Town of Huntington*, No. 11-cv-3754 (JFB) (GRB), 2012 WL 3842567, at *14 n.11 (E.D.N.Y. Sept. 5, 2012) (quoting *Walker v. Clemson*, No. 11-cv-9623(RJS) (JLC), 2012 WL 2335865, at *7 (S.D.N.Y. June 20, 2012); *accord McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)) (internal quotation marks omitted).

Here, Plaintiff fails to include any allegations as to Correction Officer Holder or Captain Polite. Accordingly, the claims against Defendants Holder and Polite are dismissed for failure to allege their personal involvement.

### B.  Section 1986 Claims

Plaintiff also brings a claim under 42 U.S.C. § 1986 against Dr. Greenwald and other unspecified Defendants based on their alleged failure to prevent him from receiving inadequate medical care.  Plaintiff alleges that Defendants had "knowledge that medical violations were being committed against Plaintiff" and "power to prevent, stop, [or] correct" those medical violations, but "failed to do so."  Second Am. Compl. at 2, 7.  Section 1986, however, "only provides a cause of action against a person with the power to prevent a Section 1985 violation who has failed to do so[.]"  *Poulos v. City of New York*, No. 14-cv-3023 (LTS) (HBP), 2015 WL 5707496, at *8 (S.D.N.Y. Sept. 29, 2015).  "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).

"To state a claim for conspiracy to commit a civil rights deprivation under 42 U.S.C. § 1985, a plaintiff must allege:  (1) a conspiracy; (2) to deprive directly or indirectly any person of equal protection of the laws, or of equal privileges and immunities; and (3) an act in furtherance of the conspiracy; (4) whereby his person or property is injured or he is deprived of any right of a U.S. citizen."  *Poulos*, 2015 WL 5707496, at *7 (citing *Mian*, 7 F.3d at 1087–88).  Moreover, "the conspiracy must be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'"  *Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 386 (S.D.N.Y. 2014) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)), *aff'd*, 622 F. App'x 38 (2d Cir. 2015).

Plaintiff fails to state a claim under § 1985 for at least two reasons.  First, Plaintiff fails to allege any racial or class-based animus motivating the purportedly inadequate medical treatment that he received.  *See Katz v. Klehammer*, 902 F.2d 204, 208 (2d Cir. 1990) (Section 1985 claim "was properly dismissed as frivolous" where complaint was "completely devoid of any claim of class-based animus, whether economic, political, or otherwise").  Nor does Plaintiff allege the existence of

*any* conspiracy, let alone one motivated by racial or class-based animus.  *See Odermatt v. Way*, No. 13-cv-5017 (SLT) (ST), 2016 WL 3034481, at *14 (E.D.N.Y. May 25, 2016) (dismissing Section 1985 claim because complaint "fails to specify who conspired, the goals of the conspiracy, or when the conspiracy took place").

Because Plaintiff fails to adequately plead a Section 1985 claim, any claim brought under Section 1986 must also be dismissed.

### C. ADA and Rehabilitation Act

Plaintiff alleges that Defendants violated the Americans with Disabilities Act and the Rehabilitation Act based on identical allegations raised in his constitutional claims, *i.e.*, that Plaintiff was not provided with adequate medical care and a proper diet to treat his diabetic condition. "Section 504 of the Rehabilitation Act and Title II of the ADA are applicable to inmates in state prisons."  *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) and *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1035 (S.D.N.Y. 1995)).

"In order to state a claim under the ADA, a prisoner must establish that:  (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity that provides the service, program, or activity is a public entity."  *Id.* (brackets, internal quotation marks, and citation omitted).  "The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act."  *Rosado v. Herard*, No. 12-cv-8943 (PGG) (FM), 2014 WL 1303513, at *4 (S.D.N.Y. Mar. 25, 2014) (quoting *Clarkson*, 898 F. Supp. at 1037).  "To state a claim for relief under section 504 of the Rehabilitation Act, an inmate must show that:  (1) he is a 'qualified individual with a disability'; (2) he is 'otherwise qualified' to participate in the offered activity or program or to enjoy the services or benefits offered; (3) he is being excluded from participation or enjoyment solely by reason of his disability; and (4) the entity denying the

inmate participation or enjoyment receives federal financial assistance." *Allah*, 405 F. Supp. 2d at 274–75 (quoting 29 U.S.C. § 794(a)).

Even assuming that Plaintiff's diabetic condition constitutes a disability within the meaning of the ADA and the Rehabilitation Act, Plaintiff fails to state a claim under either statute. The complaint fails to allege that Plaintiff was excluded from participation in any program or activity, or otherwise treated differently, because of the disability. "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases).

Moreover, the complaint essentially seeks to bring claims for medical malpractice under the guise of the ADA and Rehabilitation Act. But, "[n]either the ADA nor the Rehabilitation Act . . . create a remedy for medical malpractice[.]" *Maccharulo v. N.Y. State Dep't of Corr. Servs.*, No. 08-cv-301 (LTS), 2010 WL 2899751, at *2 (S.D.N.Y. July 21, 2010) (internal quotation marks and citation omitted); *see also Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) (Plaintiff's "claim that he was denied medical treatment, in this case, a proper diet, is not the type of claim that the ADA and the Rehabilitation Act were intended to cover.") (brackets, internal quotation marks, and citation omitted). Accordingly, Plaintiff's claims under the ADA and Rehabilitation Act are dismissed.

### D. Failure To Prosecute

On December 9, 2015, the Court ordered that Plaintiff complete service process forms within thirty days so that service could be effectuated on the newly-added Defendants in Plaintiff's second amended complaint. Dkt. No. 78. At that time, the Court explained that Plaintiff "must effect service with 90 days of the date the summons is issued," and noted that "[i]t is [P]laintiff's responsibility to inquire of the Marshals Service as to whether service has been made[.]" *Id.* at 3–4.

The Court further cautioned that "[i]f within 90 days of issuance of the summons, [P]laintiff has not made service or requested an extension of time in which to do so, under Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure, the Court may dismiss this action for failure to prosecute." *Id.* at 4.

To date, Plaintiff has failed to properly complete service process forms for a number of Defendants, including: Corizon Health Services, Dr. Parks, Alicia Nicholls, Marshall Tse, Nurse Assistant Thomas, Medical Director Dr. Raul Ramon, Adetokunbo Odunbaku, George Aryeertev, Josue Rene, Iyiola Aiyeku, Sarah Ajabe, Ivor Bharat, Collete Dwyer, and Leon Scrimmager. Thus, although over seven months have passed since the Court's order directing that service be completed, Plaintiff has failed to take the appropriate steps to effectuate service on those Defendants, and failed to otherwise request an extension of time to do so.

At this time, the Court is *sua sponte* dismissing Plaintiff's claims against the unserved Defendants without prejudice pursuant to Rule 41(b), due to Plaintiff's failure to prosecute his claims as to those Defendants. "While appellate courts apply a number of factors in evaluating the propriety of a dismissal for failure to prosecute, a district court is not required to discuss these factors in dismissing a case as long as an explanation is given for the dismissal." *Liang v. Lucky Plaza Rest.*, No. 12-cv-5077 (PAC) (GWG), 2013 WL 3757036, at *3 (S.D.N.Y. July 17, 2013) (adopting report and recommendation) (citing *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001) and *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). Here, it is sufficient to note that the Court is dismissing Plaintiff's claims as to the unserved Defendants after giving Plaintiff notice that his failure to take appropriate steps to effectuate service could result in such action, and that after over seven months have passed without such steps being taken. The above-referenced Defendants have not appeared and were never served, and thus will not be prejudiced by this dismissal.

### E. State Law Claims

Under 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels *against* exercising supplemental jurisdiction in such a situation: "If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)) (brackets omitted).

Having dismissed all of Plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over any state law claims raised in the complaint. *See* 28 U.S.C. § 1367(c)(3). Thus, to the extent that the second amended complaint can be construed as asserting any state law claims, those claims are dismissed.

### F. Leave to Amend

"A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (brackets, internal quotation marks, and citation omitted). Despite the fact that Plaintiff has amended his complaint twice, the Court is mindful that "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen*, 746 F.3d at 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). Thus, the Court grants Plaintiff leave to amend the complaint to and cure any deficiencies. Plaintiff should not expect any additional opportunities to amend the complaint—"[t]hree bites at the apple is enough." *Official Comm. of Unsecured Creditors of Color Tile, Inc.*

*v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997).

## V.      CONCLUSION

For the reasons outlined above, Defendants' motions to dismiss are GRANTED.  The claims against Defendants Corizon Health Services, Dr. Parks, Alicia Nicholls, Marshall Tse, Nurse Assistant Thomas, Medical Director Dr. Raul Ramon, Adetokunbo Odunbaku, George Aryeertev, Josue Rene, Iyiola Aiyeku, Sarah Ajabe, Ivor Bharat, Collete Dwyer, and Leon Scrimmager are dismissed without prejudice.  The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 87, 95.  Plaintiff is granted leave to file an amended complaint, as set forth above, no later than thirty days from the date of this order.

SO ORDERED.

Dated:  August 2, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge